**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Michael DIAZ, Appellant.**

Superior Court of Pennsylvania.

Submitted July 23, 2012.

Filed Aug. 22, 2012.

Eric J. Taylor, Reading, for appellant.

Alisa R. Hobart, Assistant District Attorney, Reading, for Commonwealth appellee.

BEFORE: ALLEN, LAZARUS, and OTT, JJ.

OPINION BY ALLEN, J.:

¶ 1 Michael Diaz, ("Appellant"), appeals from the judgment of sentence imposed following his conviction for persons not to possess firearms.[1] We affirm.

¶ 2 The trial court summarized the pertinent factual background as follows:

On April 17, 2010, Troopers Brendan Connor and Andrew Margolin of the Pennsylvania State Police were working the driving under the influence detail on North 9th Street in Reading, Pennsylvania. The Troopers observed a green station wagon driven by [Appellant] with an inoperable front headlight. The Troopers initiated a stop, and upon asking [Appellant] for his paperwork, Trooper Connor noticed that the inspection and emissions stickers looked fraudulent. Trooper Connor asked [Appellant] to step out of the vehicle to get a closer look at the sticker. Trooper Connor observed that all of the individuals in the vehicle were wearing blue bandanas, and [Appellant] was wearing a black leather jacket with the word "Assassinators" emblazoned on it. Trooper Connor asked [Appellant] if he had any weapons on him. After denying possession of a weapon, Trooper Conner patted down [Appellant]. During the pat-down, Trooper Conner felt a hard metal object in the shape of a revolver that he knew was a gun. Trooper Connor seized the loaded gun, a .32 Caliber revolver, and detained [Appellant]. [Appellant] does not have a valid license to carry a firearm.

---

1. 18 Pa.C.S.A. § 6105(a).

Trial Court Opinion, 4/2/12, at 3 (citations to notes of testimony omitted).

¶ 3 The trial court also detailed the somewhat convoluted procedural history of this case:

After [Appellant's] April 17, 2010 arrest, Appellant was charged with six offenses. On July 9, 2010, [Appellant] made a motion to sever Count 1, the offense at issue here [persons not to possess firearms], from the remaining five counts. On November 17, 2010, a jury found [Appellant] guilty of Count 2, Firearms not to be Carried Without a License, in violation of 18 Pa.C.S.A. § 6106(a)(1). The same day, [the trial court] found [Appellant] guilty of four related summary traffic offenses. On December 27, 2010, [the trial court] sentenced [Appellant] to not less than 42 months nor more than 7 years of incarceration in a State Correctional Facility with 254 days credit for time served. On January 24, 2011, [Appellant] timely appealed his conviction and Judgment of Sentence. On February 1, 2011, while his appeal was still pending, [Appellant] filed a Petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. § 9541 et. seq. (PCRA). On February 3, 2011, [the trial court] dismissed the PCRA Petition without prejudice. [Appellant] timely filed a Statement of Matters Complained of on Appeal, and the Superior Court affirmed [Appellant's] Judgment of Sentence on December 14, 2011.

On March 28, 2011, a jury found [Appellant] guilty of the remaining count, Count 1, Person Not to Possess, Use, Manufacture, Control, Sell, or Transfer firearms [at issue here in this appeal]. [Appellant] was originally scheduled to be sentenced on April 7, 2011, but [Appellant] was inadvertently transferred to [the] State Correctional Institute at Gra-

terford for classification. [Appellant] originally was sent to SCI Camp Hill, and the Court set a sentencing date for September 21, 2011. Due to an unexpected unavailability of the [trial court], the [trial court] rescheduled the sentencing for December 19, 2011.

On October 7, 2011, [Appellant] informed the [trial court] that he was transferred to SCI Greene, and [the trial court] set a sentencing via videoconferencing with SCI Greene for December 19, 2011. On December 19, 2011, a time conflict due to a lengthy resentencing interfered with SCI Greene's ability to videoconference with the [trial court], so sentencing was rescheduled for January 9, 2012. On January 9, 2012, [the trial court] sentenced [Appellant] to not less than four (4) nor more than eight (8) years of incarceration to begin on the date of sentencing with, by stipulation, no credit for time served.

On February 8, 2012, [Appellant] timely appealed the Judgment of Sentence. Pursuant to [trial court] order and Pa.R.A.P. 1925(b), on February 28, 2012, [Appellant] timely filed a Concise Statement of Errors Complained of on Appeal. [The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) ].

Trial Court Opinion, 4/2/12, at 1–3.

¶ 4 On appeal, Appellant raises the following issue for our review:

1. WHETHER APPELLANT'S DUE PROCESS AND SPEEDY TRIAL RIGHTS WERE VIOLATED WHEN THE [TRIAL] COURT DENIED APPELLANT'S ORAL MOTION OF FAILING TO SENTENCE HIM ACCORDING TO THE TIME LIMITS IN Pa. R.Crim.P. 704, AS APPELLANT WAS CONVICTED ON MARCH 28, 2011 AND HE WAS NOT SENTENCED UNTIL JANUARY 9,

2012, AND APPELLANT WAS PREJUDICED BECAUSE HE HAD BEEN SERVING AN EARLIER SENTENCE ON THE SEVERED CHARGES FROM THE SAME DOCKET AND RECEIVED A CONCURRENT SENTENCE FOR THE INSTANT CHARGE BUT NO CREDIT TIME FOR ANY OF THE TIME HE HAD BEEN INCARCERATED AND SERVED ON THE EARLIER SENTENCE?

Appellant's Brief at 4.

¶ 5 Appellant asserts that the trial court violated his due process rights and his rights to a speedy trial by sentencing him 278 days after he had been convicted, in violation of Pa.R.Crim.P. 704. Appellant's Brief at 13–25.

¶ 6 Pa.R.Crim.P. 704 provides, in pertinent part, as follows:

(A) Time for Sentencing.

(1) Except as provided by Rule 702(B), sentence in a court case shall ordinarily be imposed within 90 days of conviction or the entry of a plea of guilty or nolo contendere.

(2) When the date for sentencing in a court case must be delayed, for good cause shown, beyond the time limits set forth in this rule, the judge shall include in the record the specific time period for the extension.

Pa.R.Crim.P. 704.

¶ 7 With regard to claims of untimely sentencing, this Court has explained:

The appropriate remedy for a violation of Pa.R.Crim.P. 1405 [now Pa.R.Crim.P. 704], is discharge. However, the remedy does not automatically apply whenever a defendant is sentenced more than [ninety] days after conviction without good cause. Instead, a violation of the [ninety-day] rule is only the first step toward determining whether the remedy of discharge is appropriate.

\* \* \*

[A] defendant who is sentenced in violation of Pa.R.Crim.P. 1405 [now Pa.R.Crim.P. 704], is entitled to a discharge only where the defendant can demonstrate that the delay in sentencing prejudiced him or her.... [T]o determine whether discharge is appropriate, the trial court should consider:

(1) the length of the delay falling outside of [the Pa.R.Crim.P. [90–day–and–good–cause provisions]; (2) the reason for the improper delay; (3) the defendant's timely or untimely assertion of his rights; and (4) any resulting prejudice to the interests protected by his speedy trial and due process rights. Prejudice should not be presumed by the mere fact of an untimely sentence. Our approach has always been to determine whether there has in fact been prejudice, rather than to presume that prejudice exists. The court should examine the totality of the circumstances, as no one factor is necessary, dispositive, or of sufficient importance to prove a violation.

*Commonwealth v. Anders*, 555 Pa. 467, 725 A.2d 170, 172–173 (1999) (footnotes and internal citations omitted)

¶ 8 Appellant concedes that on March 28, 2011, the date of his conviction, he asked that the trial court delay sentencing for 11 days, in order for Appellant and his counsel to prepare. Appellant acknowledges that this delay was attributable to him. Appellant's Brief at 16; N.T., 3/28/11, at 43. He asserts, however, that the subsequent delays resulting in him being sentenced 278 days later, were not attributable to him, were unreasonable, and resulted from the failure of the trial court to comply with the requirements of

Pa.R.Crim.P. 704. *Id.* at 17–26, 725 A.2d 170.

¶ 9 Our careful review of the record reveals that on March 28, 2011, following the jury's entry of a guilty verdict, Appellant in fact requested a sentencing delay. N.T., 3/28/11, at 43. The trial court judge, The Honorable Linda Ludgate, granted Appellant's request and rescheduled sentencing for April 7, 2011.

¶ 10 Thereafter, on April 7, 2011, Judge Ludgate entered the following order:

AND NOW, this 7th day of April, 2011, the Court having learned today that [Appellant] was inadvertently transferred to the Bureau of Corrections prior to him being sentenced on Count 2 of this docket [persons not to possess firearms] as the counts were severed into two trials, therefore, this sentence could not occur today; and after he is classified at Graterford they will send him to a prison, and when that occurs the Court will schedule sentencing by video conferencing.

Trial Court Order, 4/7/11, at 2.

¶ 11 On July 8, 2011, "on request of the defendant," Judge Ludgate entered an order rescheduling sentencing for September 6, 2011. Trial Court Order, 7/8/11. However, before the September 6, 2011 hearing could occur, Judge Ludgate, on August 28, 2011, became "unexpectedly unavailable," due to illness, and she remained unavailable until November 7, 2011. N.T., 1/9/12, at 4; Trial Court Opinion, 4/2/12, at 2.[2] Judge Ludgate was thus unavailable to sentence Appellant on September 6, 2011. On September 21, 2011, Judge Thomas G. Parisi, acting on behalf of Judge Ludgate, entered an order rescheduling sentencing for December 19, 2011 "on request of the defendant." Trial Court Order, 9/21/11.

¶ 12 On December 19, 2011, Judge Ludgate, having returned from her medical leave, entered the following order:

And now, this 19th day of December, 2011, it appearing that the defendant has been removed from Camp Hill and sent to SCI Greene and SCI Greene being able to accommodate the court's schedule today via videoconferencing, however, because the court was involved in a lengthy resentencing of Christopher Francisco, Docket 5731/08, SCI Greene could not hold the line open, the above-captioned matter will be rescheduled.

Trial Court Order, 12/19/11, at 2. Accordingly, Judge Ludgate rescheduled sentencing for January 9, 2012, when she sentenced Appellant to 4 to 8 years of incarceration, with no credit for time served.

¶ 13 Judge Ludgate explained:

Originally, the [trial court] scheduled sentencing for the day of trial, March 28, 2011. However, [Appellant] asked for a later date, which the [trial court] granted, and set trial for April 7, 2011. [Appellant] was not sentenced until January 9, 2012, well past the 90 day limit imposed by Rule 704. As such, the reasons for the delay must be analyzed.

Originally, [Appellant's] sentencing was delayed from the day of trial due to [Appellant's] request to delay. Following that delay, [Appellant] was inadvertently transferred to SCI Graterford for classification, apparently because the Department of Corrections and Berks County Prison did not know that [Appellant] had not yet been sentenced on the instant count. Pursuant to Rule 704(A)(2), the [trial court] put this reason on the record and stated that, as soon as [Appellant] had been classified,

---

**2.** Judge Ludgate noted that the Pennsylvania Supreme Court was aware of her unavailability from August 28, 2011 to November 7, 2011, due to illness. N.T., 1/9/12, at 4.

the sentencing would be rescheduled. Following that, an unexpected absence of the [trial court] required the sentencing to be rescheduled. Finally, due to a limited window of time for a videoconference sentencing with SCI Greene, and a longer than expected resentencing hearing with another Defendant, the [trial court] was unable to sentence [Appellant]. Finally, [Appellant] was sentenced on January 9, 2012.

Clearly, inadvertent transfers of defendants, absences of the [trial court] and technical limitations do not rise to "inexcusable or intentional delay on the part of the [trial] court or the Commonwealth" as required to find prejudice against [Appellant]. As such, the delay was reasonable and [Appellant's] speedy trial rights were not violated.

Trial Court Opinion, 4/2/12, at 5. We agree with the trial court.

¶ 14 As set forth in *Anders, supra,* in order to determine whether Appellant's rights were violated, we consider four factors: the length of delay, the reason for the delay, the defendant's assertion of his rights, and the prejudice to the defendant. In conducting such an analysis, we examine the totality of the circumstances, as no one factor is necessary, dispositive, or of sufficient importance to prove a violation. *Anders,* 725 A.2d at 173. Here, the significant delay in sentencing until January 9, 2012 is sufficient to trigger further analysis pursuant to *Anders.* We therefore proceed to examine the reasons for the delay.

¶ 15 Preliminarily, we note that the July 8, 2011 sentencing order postponing sentencing until September 6, 2011, and the September 21, 2011 order postponing sen-

tencing until December 19, 2011, were both entered with the language "on request of the defendant." Order, 7/8/11; Order, 9/21/11. Thus, contrary to Appellant's assertions, the record indicates Appellant requested two postponements, and was therefore responsible for the delay of 165 days from July 8, 2011 to December 19, 2011. *See Commonwealth v. Andrews,* 391 Pa.Super. 363, 571 A.2d 410, 415 (1990) (Although a delay of two years and eleven months in sentencing was substantial, the length of the delay was mitigated by the defendant's own responsibility in causing it.).

¶ 16 The delay in Appellant's sentencing attributable to the Commonwealth and/or the trial court was due to administrative obstacles which occurred when Appellant was sent to SCI Graterford, then transferred to SCI Camp Hill, and next sent to SCI Greene, combined with the absence of Judge Ludgate due to personal illness.[3] This Court has made clear that "Rule 704 [is not] aimed at addressing or eliminating clerical error. Protecting the accused from inexcusable or intentional delay on the part of the court or the Commonwealth, the 'whim' or power of the state, is the underpinning of the right to a speedy trial." *Commonwealth v. McLean,* 869 A.2d 537, 539 (Pa.Super.2005). The trial court acknowledged the error caused by Appellant's transfer to SCI Graterford, and entered an order specifying that, upon completion of Appellant's classification by the Department of Corrections, a sentencing hearing would be scheduled. Thereafter, the trial court's absence due to illness further delayed sentencing. Upon the trial court's return to the bench, sentencing via videoconference was scheduled for De-

---

**3.** By successfully filing a motion for severance requesting that the instant charge of persons not to possess firearms be severed from the other crimes with which Appellant was charged, Appellant contributed to the procedural complexity of this case, which was a factor in his being transferred to various state correctional institutions prior to sentencing.

cember 19, 2012, at which time, due to scheduling difficulties, SCI Greene was unable to maintain its videoconference connection, resulting in sentencing being deferred to January 9, 2012.

¶ 17 Prior to entering Appellant's sentence, the trial court stated:

I want the record to reflect that this was scheduled at least three times and you were transferred to different state penitentiaries. I can go back and reconstruct that. But the point is, we made efforts to sentence you, and then there was a problem with your being transferred to different SCIs.

\* \* \*

So we tried to sentence him. Then when we scheduled it for the first part of September, [Judge Ludgate] was unavailable from August 28, until November 7th, which the ... Supreme Court is aware of, because of an illness.... Then we attempted to schedule this now, and there have been issues.... So efforts have been made to do this as quickly as possible.

\* \* \*

The [trial court] has considered [Appellant's] motion regarding Rule 704. The [trial court] is satisfied that pursuant to that rule, that there were changes made to sentencing because of [Appellant] changing his location, being moved in SCIs, which isn't his fault, but nonetheless, it isn't for want of trying on the part of the [trial court], and then the [trial court] being unavailable for that period of time. And then the last time we listed this for a sentencing hearing, there was a problem with the video conferencing equipment, being we had to finish one hearing, it ran over. So efforts have been made to comply with the rules, and the [trial court] is satisfied with regard to that.

N.T., 1/9/12, at 4, 9.

¶ 18 The delay in Appellant's sentencing was significant and unfortunate. However, the delays resulting from Appellant's transfer to three different state correctional institutions, administrative and ensuing scheduling difficulties and illness of Judge Ludgate, constitute neither intentional nor inexcusable conduct on the part of the trial court or Commonwealth, and do not rise to the level of delay "without good cause." *Anders, supra. See Commonwealth v. Thompson,* 701 A.2d 1367 (Pa.Super.1997) (sentencing judge's serious illness and data entry error constituted good cause or extraordinary circumstances justifying sentencing delay).

¶ 19 Appellant argues that he suffered prejudice as a result of the sentencing delay because, when he was finally sentenced on January 9, 2012, the trial court did not give him any credit for time served. The trial court, addressing this argument, explained:

Here, [Appellant] was charged with two separate offenses, Persons not to Possess Use, Manufacture, Control, Sell or Transfer Firearms, and Firearms not to Be Carried Without a License. [Appellant] was sentenced for the latter offense first, and all time up to the sentencing at issue here was applied to that sentence. Accordingly, [Appellant] was not entitled to credit time towards the instant sentence. As such, [Appellant] was not prejudiced in any way, the [trial court] did not abuse its discretion, [Appellant's] argument has no merit and the claim of error fails.

Trial Court Opinion, 4/2/12, at 6; 42 Pa. C.S.A. § 9760. We agree with the trial court that because all of Appellant's time served from the date of his arrest until the imposition of his first sentence, on Decem-

ber 27, 2010, was applied to the December 27, 2010 sentence, Appellant was not entitled to have that credit for time served re-applied when he was sentenced in the present case.

¶ 20 Appellant asserts that had he been sentenced in a more timely fashion, he would have served less time in prison. "In evaluating a Rule 704 motion for discharge, a defendant must demonstrate actual prejudice." *Commonwealth v. Fox,* 953 A.2d 808, 811 (Pa.Super.2008). Here, Appellant claims that the delay in sentencing in the present case will result in him spending more time incarcerated than he would have spent, had he been sentenced earlier. He contends that if he had been sentenced earlier, his instant, concurrent sentence (persons not to possess firearms), would have overlapped with the first sentence (carrying a firearm without a license), for a longer period, resulting in him spending less overall time in prison. Appellant's Brief at 22–25. Appellant maintains that it was error, therefore, for the trial court to commence his sentence on January 9, 2011, the date of its imposition, without granting him credit for time he had already served for the earlier conviction for carrying a firearm without a license.

¶ 21 Sentencing, however, is a matter vested in the sound discretion of the trial court. *Commonwealth v. Prisk,* 13 A.3d 526, 533 (Pa.Super.2011). The record in this case reflects Judge Ludgate's familiarity with Appellant during his two severed trials, as well as his respective sentencings. The record also reflects Judge Ludgate's intent that Appellant's sentence in the present case (persons not to possess firearms), run concurrently with the prior sentence (carrying a firearm without a li-

cense), commencing on January 9, 2012. Judge Ludgate acted within her discretion in imposing Appellant's sentence. *Prisk,* 13 A.3d at 533 (trial courts have the discretion to impose sentences concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed). *See also* Pa.R.Crim.P. 705(B) ("when a sentence is imposed on a defendant who is sentenced for another offense, the judge shall state whether the sentences shall run concurrently or consecutively. If the sentence is to run concurrently, the sentence shall commence from the date of imposition unless otherwise ordered by the judge").

¶ 22 Further, Appellant's assertion that the sentencing delay interfered with the potential of him serving a shorter overall sentence is speculative. Had Appellant been sentenced earlier, there is no certainty that he would have received the benefit of a shorter or concurrent sentence. Judge Ludgate possessed the discretion to determine the length of Appellant's sentence, and could have imposed a longer sentence, or even consecutive sentences, and this Court cannot speculate as to what sentence Appellant "would have received" had sentencing occurred earlier. *See Commonwealth v. Dickens,* 327 Pa.Super. 147, 475 A.2d 141 (1984) (the appellant's assertion that delay foreclosed the possibility of having the sentence on the new charge run concurrently with an earlier sentence imposed is entirely speculative and not probative of prejudice).[4] When reviewing a claim of untimely sentencing, we should examine the totality of the circumstances as no one factor is necessary, dispositive, or of sufficient importance to prove a violation. *Anders,* 725 A.2d at 172–173. Here, given that the sentencing

---

4. Although *Dickens, supra* pertains to Pa. R.Crim.P. 708 (formerly Pa.R.Crim.P. 1409) while the present case concerns Pa.R.Crim.P. 704 (formerly Pa.R.Crim.P. 1405), we find the analysis of prejudice in *Dickens* applicable to this decision.

delay was neither intentional nor inexcusable, and the fact that Appellant's claim of prejudice is speculative, we conclude that discharge is not warranted. *See Commonwealth v. Fox*, 953 A.2d 808, 813 (Pa.Super.2008) (society has an interest in knowing that its convicted felons are serving the punishment to which they have been sentenced, regardless of inadvertent delay or negligent error). Therefore, we affirm the judgment of sentence.

¶ 23 Judgment of sentence affirmed.