J-S31026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                             :        PENNSYLVANIA
                             :
            v.               :
                             :
                             :
ROBERT CURET-SANCHEZ         :
                             :
        Appellant            :  No. 1743 MDA 2019

Appeal from the Judgment of Sentence Entered September 11, 2019
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s):  CP-35-CR-0001680-2018

BEFORE:  BOWES, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:                **FILED SEPTEMBER 29, 2020**

Appellant, Robert Curet-Sanchez, appeals from the Judgment of

Sentence of one to three years of incarceration, entered on September 11,

2019, following a bench trial resulting in his conviction for one count of

Possession with Intent to Deliver ("PWID").[1]  Appellant challenges the

suppression court's denial of his Motion to Suppress; the sufficiency and

weight of the evidence introduced at trial; and the timeliness with which the

trial court imposed sentence.  After careful review, we affirm.

On July 16, 2018, Lackawanna County Detective Harold Zech initiated a

traffic stop after observing Appellant fail to use a turn signal while exiting from

the highway.  Upon approaching Appellant's vehicle, Detective Zech observed

numerous air fresheners—hanging from the rearview mirror, in the air vents,

_____

[1] 35 P.S. § 780-113(a)(30).

and from the passenger seat. Because the traffic stop occurred on a busy street, Detective Zech asked Appellant to exit the vehicle and speak with him at a safer location off the roadway. Appellant complied with this request.

Detective Zech informed Appellant that he would issue Appellant a written warning. While drafting the warning, and running Appellant's name and vehicle information for warrants, Detective Zech observed that Appellant was extremely nervous, visibly shaking and sweating. After he noticed that Appellant had an active call on his cell phone, Appellant stated that he had his girlfriend on the line in case police officers arrested him. When Detective Zech asked Appellant where he was heading in his vehicle, Appellant stated that he was on his way to meet a longtime friend, but he was unable to remember his friend's last name.

Based on these observations—the air fresheners, Appellant's nervousness and fear of arrest, and his inability to provide his longtime friend's last name—Detective Zech believed that Appellant was engaged in criminal activity and, therefore, asked Appellant for consent to search his car. Appellant refused, and Detective Zech then informed Appellant that he would request a canine officer to search the exterior of the vehicle. Within two to three minutes, before Detective Zech had completed the written warning, the canine officer arrived, performed the search of the vehicle, and indicated the positive presence of narcotics odors.

Detective Zech then searched the interior of the vehicle and discovered nine zip-lock baggies and two cigar blunts containing suspected synthetic

marijuana. He arrested Appellant, and the Commonwealth charged Appellant with PWID and related crimes.

Appellant filed a Motion to Suppress the narcotics, asserting that Detective Zech lacked reasonable suspicion to detain him until the canine officer had searched the exterior of Appellant's vehicle. Following a hearing, at which Detective Zech testified, the suppression court denied Appellant's Motion.

On January 23, 2019, the court held a bench trial at which Detective Zech testified that he seized approximately 50 grams of synthetic marijuana from a secret compartment cut by a serrated knife by hand into the space behind the gearshift in the center console of Appellant's vehicle. He also testified that "it's common for some drug traffickers to leave a small amount of product visibly apparent to the police officer so that they can find it, seize it, [and] conclude the search [without discovering the larger quantity hidden]." N.T. Trial, 1/23/19, at 33.[2] Based on the amount of marijuana seized, its packaging and manner of concealment, Detective Zech opined that Appellant possessed the narcotics with intent to distribute them.

Appellant testified and acknowledged that the marijuana was his but asserted that it was for his personal consumption. He also denied that he had created the hidden compartment in the vehicle, claiming that it came from the factory in that condition.

_____

[2] Detective Zech also testified as a narcotics trafficking expert.

- 3 -

The court found Appellant guilty of one count of PWID on January 23, 2019, but did not immediately order a Pre-Sentence Investigation ("PSI"). After delay caused by administrative error,[3] the court ordered an expedited pre-sentence investigation ("PSI"), which was completed on August 28, 2019, and subsequently sentenced Appellant on September 11, 2019. Appellant timely filed Post-Sentence Motions on September 20, 2019, *inter alia* challenging the weight of the evidence, which the trial court denied on September 23, 2019.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) Statement. The trial court issued a responsive Opinion.

Appellant raises the following issues, edited for clarity:

1. Whether the suppression court erred in denying his Motion to Suppress, as Detective Zech lacked reasonable suspicion to request a canine officer conduct a search of the exterior of Appellant's vehicle;

2. Whether there was sufficient evidence of Appellant's intent to distribute the narcotics found in his possession;

3. Whether the verdict was against the weight of the evidence, as the evidence indicated the narcotics were intended for Appellant's personal use; and

4. Whether the trial court's delay in sentencing Appellant was prejudicial such that his discharge is appropriate.

**See** Appellant's Br. at 4.

**Denial of Appellant's Motion to Suppress**

_____

[3] Appellant was released on bail during this delay.

- 4 -

In his first issue, Appellant contends that the suppression court erred in denying his Motion to Suppress.  Appellant's Br. at 17.

We review the suppression court's decision to deny a motion to suppress to determine "whether [its] factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Milburn***, 191 A.3d 891, 897 (Pa. Super. 2018) (citation omitted).  "Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." ***Commonwealth v. Freeman***, 150 A.3d 32, 34 (Pa. Super. 2016) (citation omitted).  We are bound by the suppression court's factual findings where they are supported by the record, and we may reverse only if the court's legal conclusions are erroneous. ***Id.*** at 35.

"Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, 'whose duty it is to determine if the suppression court properly applied the law to the facts.'" ***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010) (citations omitted).  "Thus, the conclusions of law of the courts below are subject to our plenary review." ***Id.*** (citations omitted).

Here, Appellant contends that the Commonwealth failed to demonstrate that Detective Zech had reasonable suspicion to detain Appellant until the canine search occurred. *Id.* at 24-26.[4, 5]

Because a canine search of the exterior of a vehicle is "inherently less intrusive upon an individual's privacy than other searches[,]" police officers may detain an individual based upon reasonable suspicion that narcotics would be found in the place subject to the canine sniff rather than the more stringent standard of probable cause. *Commonwealth v. Rogers*, 849 A.2d 1185, 1190 (Pa. 2004) (citation omitted).

In order to determine whether an officer had reasonable suspicion that criminal activity was afoot, we examine the totality of the circumstances to determine if "the detaining officer ha[d] a particularized and objective basis for suspecting legal wrongdoing." *Commonwealth v. Freeman*, 150 A.3d 32, 41 (Pa. Super. 2016) (citation omitted). We need not limit our inquiry to those facts that unmistakably indicate criminal activity. "Rather, even a combination of innocent facts, when taken together, may warrant further

---

[4] Appellant conceded that there was probable cause to search the interior of his vehicle based on the results of the canine search. *See* Motion to Suppress, 11/20/18, at ¶ 18.

[5] Appellant also asserts that there was no reason for Detective Zech to ask Appellant to exit the vehicle, thus prolonging the traffic stop unnecessarily. *See* Appellant's Br. at 21. We reject this assertion. Detective Zech testified that the traffic stop occurred on a busy street and that he requested that Appellant exit his vehicle for safety reasons. N.T. Suppression, 11/27/18, at 11.

- 6 -

investigation by the police officer." ***Rogers***, 849 A.2d at 1189 (citation omitted).

In this case, the suppression court determined that Detective Zech, who had advanced training and experience in narcotics investigations, had reasonable suspicion to believe "criminal activity was afoot." Suppression Ct. Op. at 7. According to the court, "[t]he abundance of air fresheners, [Appellant]'s nervousness, his fear of arrest despite only receiving a written warning, and the information about [his] travel plans, considered together, rise[] to the level of reasonable suspicion." ***Id.***

We agree with the suppression court's conclusions. These facts, combined with Detective Zech's training and experience, support the suppression court's conclusion that Detective Zech had a particularized and objective basis for suspecting that Appellant was engaged in criminal activity. We further conclude that the court did not err in its legal conclusion that Appellant's detention was supported by reasonable suspicion. Thus, no relief is due.

## Sufficiency of the Evidence

In his second issue, Appellant contends there was insufficient evidence to establish that he possessed the synthetic marijuana with intent to distribute. ***See*** Appellant's Br. at 26-29. Appellant's claim is without merit.

"A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). We review a sufficiency challenge *de novo*; our scope of review is limited to the evidence

of record. ***Commonwealth v. Robinson***, 128 A.3d 261, 264 (Pa. Super. 2015) (*en banc*).

The Commonwealth must establish each element of the crimes charged beyond a reasonable doubt. ***Commonwealth v. Forrey***, 108 A.3d 895, 897 (Pa. Super. 2015). The fact-finder is tasked with determining the weight to be given the evidence and the credibility of the witnesses; the fact-finder may believe all, part, or none of the evidence. ***Id.*** We review the evidence, and all reasonable inferences derived therefrom, in the light most favorable to the Commonwealth. ***Commonwealth v. Maerz***, 879 A.2d 1267, 1269 (Pa. Super. 2005); ***Commonwealth v. Young***, 535 A.2d 1141, 1142 (Pa. Super. 1988).

To establish PWID, "the Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance [to another]." ***Commonwealth v. Brown***, 904 A.2d 925, 931 (Pa. Super. 2006); 35 P.S. § 780-113(a)(30). The fact-finder may infer the intent to deliver from all the facts and circumstances surrounding a defendant's possession. ***Commonwealth v. Jackson***, 645 A.2d 1366, 1368 (Pa. Super. 1994).

It is well settled that a fact-finder may infer intent to deliver from possession of a large quantity of controlled substances. ***Commonwealth v. Santiago***, 340 A.2d 440, 444 (Pa. 1975). Where the quantity of narcotics seized does not conclusively establish intent, other relevant circumstances include "the manner in which the controlled substance was packaged, the

behavior of the defendant, the presence of drug paraphernalia, and large sums of cash found in possession of the defendant." ***Jackson***, 645 A.2d at 1368 (citation omitted). Importantly, "[n]ot all of these factors must be present to prove intent to deliver a control substance, nor must they be given equal weight." ***Id.***

In addition, the fact-finder may consider admissible expert testimony that the facts surrounding a defendant's possession are consistent with an intent to deliver. ***Commonwealth v. Ariondo***, 580 A.2d 341, 350-51 (Pa. 1990) (citation omitted).

Appellant concedes that he possessed the narcotics but argues that he did not intend to distribute them. In support of this argument, he emphasizes the lack of evidence of drug paraphernalia, packaging materials, cash, or multiple cell phones. Appellant's Br. at 29-30. Appellant fundamentally misunderstands our standard of review. We must review only the evidence that **was** presented at trial to determine whether it supports the conviction.

Our *de novo* review confirms that the Commonwealth presented evidence that police seized a large quantity of synthetic marijuana artfully concealed in Appellant's vehicle—a quantity far more than a person would possess for personal use. Detective Zech testified that the effort to conceal the narcotics was considerable, in particular noting that Appellant sought to mask the odor of the narcotics with numerous air fresheners and altered the structure of the vehicle to create a hidden compartment within which to conceal their visible presence. N.T. Trial, 1/23/19, at 19-26. In addition,

Detective Zech provided a comprehensive review of the typical user's consumption of synthetic marijuana, its potency, and its price. *Id.* at 27-30. He testified that, despite thousands of investigations of users and dealers, he had never come across a user "with that amount on their person or able to ingest that amount." *Id.* at 32. Viewed in the light most favorable to the Commonwealth, this evidence was sufficient to establish Appellant's intent to deliver a controlled substance.

## Weight of the Evidence

In his third issue, Appellant challenges the weight of the evidence. *See* Appellant's Br. at 30.

"The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citation omitted).

"Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted; emphasis removed). "It is the trial court's function to evaluate and weigh the evidence; such determinations are not lightly disturbed by an appellate court." *Commonwealth v. Hamaker*, 541 A.2d 1141, 1143 (Pa. Super. 1988) (citation omitted).

Thus, the trial court's decision whether a verdict was or was not against the weight of the evidence is one of the least assailable of its rulings. *See*

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000). We will not reverse the trial court's decision unless it has "palpably abused its discretion." **Commonwealth v. Castelhun**, 889 A.2d 1228, 1234 (Pa. Super. 2005) (citation omitted).

In support of his claim, Appellant renews the arguments he raised in support of his sufficiency challenge. For example, he asserts that, except for the substantial quantity of narcotics seized, there was no other "indicia of possession with intent to deliver." Appellant's Br. at 32. Appellant also notes that he testified regarding his drug addiction, his smoking large quantities of synthetic marijuana every day, and his working "under the table" to support his addiction. *Id.* Thus, according to Appellant, the evidence indicated that he possessed the narcotics for personal use, not distribution. *See id.* at 30.

The trial court—sitting as the fact-finder—found that Appellant's testimony was not credible. Trial Ct. Op. at 5; N.T. Trial at 73. Conversely, the trial court found Detective Zech's testimony credible, concluding that "the evidence indicated that this was a sophisticated operation with drugs secreted in a compartment specially constructed for that purpose." Trial Ct. Op. at 5. According to the trial court, "[t]he evidence was consistent and reliable, . . . and thus [Appellant's] conviction was not against the weight of the evidence." Trial Ct. Op. at 6.

Based on this reasoning and the substantial evidence of Appellant's guilt, we discern no abuse of the trial court's discretion in denying Appellant's challenge to the weight of the evidence. Thus, no relief is due.

## Pa.R.Crim.P 704(A) – Untimely Sentencing

In his fourth issue, Appellant contends that the trial court failed to sentence him within ninety days of his conviction, thus violating Pa.R.Crim.P 704(A). Appellant's Br. at 32. According to Appellant, the court's failure to impose sentence promptly "severely prejudiced [him] as he had posted bail and began [sic] rebuilding his life." *Id.* at 32-33.

Rule 704(A) provides that a "sentence in a court case shall ordinarily be imposed within 90 days of conviction[.]" Pa.R.Crim.P. 704(A)(1). Failure to sentence within the time specified may result in the discharge of the defendant. *See Commonwealth v. Anders*, 725 A.2d 170, 173 (Pa. 1999).

In order to determine whether the trial court violated a defendant's right to a speedy sentencing hearing, we consider "the length of delay, the reason for the delay, the defendant's assertion of his rights, and the prejudice to the defendant." *Commonwealth v. Diaz*, 51 A.3d 884, 889 (Pa. Super. 2012) (citation omitted). We examine the totality of the circumstances, "as no one factor is necessary, dispositive, or of sufficient importance to prove a violation." *Anders*, 725 A.2d at 173 (citation omitted).

Where the delay is the result of scheduling difficulties not attributable to malfeasance by the court or Commonwealth, discharge is not appropriate. *See, e.g.*, *Diaz*, 51 A.3d at 890; *Commonwealth v. McLean*, 869 A.2d 537, 539 (Pa. Super. 2005). Moreover, a defendant does not endure prejudice when he is free on bond throughout the delay, particularly where the defendant fails to assert his right to timely sentencing. *See, e.g.*,

*Commonwealth v. Guffey*, 710 A.2d 1197, 1199 (Pa. Super. 1998);

*Commonwealth v. Brockway*, 633 A.2dd 188, 191-92 (Pa. Super. 1993).

Here, the trial court denied Appellant's request for discharge based on the following reasoning:

> [Appellant] was released on bail during the period that he was awaiting sentence. He filed post trial motions[,] which were denied on February 26, 2019. His case then fell through administrative cracks and was not scheduled for a presentence investigation as it should have been. Neither the defendant nor his attorney brought this to the court's attention. In July [2019], when the court realized that [Appellant] had not yet been sentenced, it ordered an expedited presentence investigation. The PSI was completed on August 28, 2019. Because the delay in sentencing [Appellant] here was not intentional, and because [Appellant] was free on bail throughout the period of delay, he was not entitled to discharge[.]

Trial Ct. Op. at 7-8.

The court's reasoning is sound. The court erred in not ordering promptly a PSI, but this administrative error does not constitute malfeasance by the court. Moreover, Appellant's belated claim of prejudice is not persuasive because he remained free on bail while he awaited sentencing, never informed the court of its oversight, and did not assert his right to timely sentencing. Therefore, we conclude that Appellant is not entitled to discharge.

For all these reasons, we affirm the Judgment of Sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/29/2020