J-A11042-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RASHAWDI RASHAW PUGH, JR. | : | |
| | : | |
| Appellant | : | No. 1249 WDA 2020 |

Appeal from the Judgment of Sentence Entered June 11, 2020
In the Court of Common Pleas of Beaver County Criminal Division at
No(s): CP-04-CR-0002221-2018

BEFORE: McLAUGHLIN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED: September 21, 2021**

Rashawdi Rashaw Pugh, Jr. (Appellant), appeals from the judgment of sentence entered in the Beaver County Court of Common Pleas, following his non-jury trial convictions of firearms not to be carried without a license, tampering with or fabricating physical evidence, accidents involving death or personal injury, and accidents involving damage to an attended vehicle or property.[1]  On appeal, he challenges: (1) the sufficiency of the evidence based on the alleged lack of authority of the municipal police to act in this matter; (2) the weight and sufficiency of evidence, based on the credibility of the Commonwealth witnesses; and (3) the denial of his Pa.R.Crim.P. 704 motion for discharge for untimely sentencing.  For the following reasons, we affirm.

_____

[1] 18 Pa.C.S. §§ 6106(a)(1), 4910(1); 75 Pa.C.S. §§ 3742(a), 3743(a).

The underlying offenses were committed on September 8, 2018. Appellant was charged with one count each of firearms not to be carried without a license, persons not to possess firearms,[2] tampering or fabrication of physical evidence, receiving stolen property,[3] accidents involving damage to an attended vehicle or property, and two counts of accidents involving death or personal injury. On January 15, 2020, this case proceeded to a non-jury trial. As Appellant challenges the sufficiency and weight of the evidence on appeal, we review in detail the evidence adduced at trial.

Dana Genovese testified at trial as follows. Her boyfriend, Frederick Nardei, was driving Genovese from Cranberry Township, Pennsylvania uphill on Deer Lane Extension towards Rochester around 11:00 p.m. N.T., Non-Jury Trial Vol. I, 1/15/20, at 9. Appellant's car, traveling in the opposite direction, entered their lane, "ran [them] off the road into the ditch[,] and sideswiped" them. *Id.* at 11, 17. After Appellant hit their car, Nardei followed Appellant's car while flashing the "high beams" and sounding the horn, "trying to get [Appellant] to stop" so they could "get the driver's information for the insurance." *Id.* at 10, 19. Appellant did not stop his car, but instead drove the car "down the road[,]" and turned off his headlights before turning down an "alley" and parking. *Id.* at 10-12. Genovese and Nardei parked behind

---

[2] 18 Pa.C.S. § 6105(a).

[3] 18 Pa.C.S. § 3925(a).

- 2 -

Appellant in the alley and called police to report the accident. *Id.* at 12. At this point, they were in New Sewickley Township.

At trial, Genovese further testified that Nardei exited his car to get information from Appellant. At this time, Genovese saw the passenger in Appellant's car throw a "black gun" and "several objects" out the passenger side window. N.T., 1/15/20, at 14, 21. The next morning, Genovese went to the hospital to seek medical attention because she was "pretty banged up." *Id.* at 15. At trial, Genovese identified Appellant as the driver of the other vehicle. *Id.* at 15-16.

Nardei testified at trial to the following. When Appellant's car hit his car, the impact "was enough to knock [them] sideways," "completely 90 degrees," and Nardei went "off road" to avoid a head-on collision. N.T. 1/15/20, at 31. After the impact, Appellant did not stop his vehicle even though there were "at least" two other opportunities to pull over and exchange information. *Id.* at 31, 35. Appellant turned onto Kornman Road in New Sewickley and parked his car. *Id.* at 31-32. When Nardei stopped his car behind Appellant's car and approached, he noticed four men in the car, smelled marijuana, and saw there was damage to both vehicles. *Id.* at 33. Appellant exited his vehicle and Nardei asked for his name and insurance card. *Id.* at 33-34. Appellant responded, "I'm not showing you shit." *Id.* at 33. Nardei told Appellant that Genovese was on the phone with the police and asked again for Appellant's information. *Id.* at 33-34. Appellant again responded, "I'm not showing you shit." *Id.* at 34. Appellant and Nardei

returned to their vehicles while waiting for police, where Nardei observed beer bottles, a gun, and "at least one baggy" being thrown out of the "passenger[ ] side" of Appellant's car. *Id.* at 36. Pertinent to Appellant's arguments on appeal, we note that at the preliminary hearing, Nardei testified the gun was thrown out the window while Nardei was outside his car speaking with Appellant. *Id.* at 45. Nardei, who had a prior neck condition, sought medical attention the next morning, and has had three "surgical procedures" related to this incident. *Id.* at 39. At trial, Nardei also identified Appellant as the driver of the vehicle that hit his car. *Id.* at 32.

Romearize Owens, who was the front passenger in Appellant's car, testified to the following. Appellant was driving Owens and two other passengers to a party on September 8, 2018. N.T. 1/15/20, at 127-28. Before police arrived at the scene, Appellant handed Owens a gun and told him to "toss" it. *Id.* at 134-35. After police arrived, Owens told them where the gun was. *Id.* at 135-36. After police brought him to the police station, Owens and the two rear seat passengers were together while Appellant was questioned separately. *Id.* at 142. Owens made a written statement that Appellant told him to "toss the gun[.]" *Id.* at 143. He discussed his statement with Appellant, who then changed his own written statement. *Id.* Owens was charged for having "a small amount of marijuana[,]" but this charge was dismissed after he completed a diversion program. *Id.* at 151. Owens testified at trial that the Commonwealth told him that if he "testif[ied] truthfully," he would not be charged with anything. *Id.* We note that in his

weight of the evidence claim on appeal, Appellant focuses on the following exchange:

[Appellant's Counsel:] And what did you have to do?

[Owens:] **Just say that the driver told me to toss the gun.**

Q. So the deal was, if you said the driver told you to toss the gun, you wouldn't be charged with anything, you get walk free; right?

A. Yeah, and say what, what all happened that night.

*Id.* at 140-41 (emphasis added).  Owens then testified it was "true" that Appellant told him to "toss the gun." *Id.* at 148.

New Sewickley Township Police Officer Richard Jones testified that on September 8, 2018, around 11:00 p.m. he responded to a call concerning the accident.  N.T., 1/15/20, at 50-51, 53.  Nardei and Genovese told Officer Jones about the gun and that the accident occurred in Rochester.  *Id.* at 53-54. Officer Jones then called fellow New Sewickley Police Officer Reese,[4] as well as Rochester Township Police, to respond to the scene.  *Id.* at 54-55.  Two Rochester Township Officers, Travis Mohrbacher and Kenneth Nicol, arrived. After Officer Mohrbacher recovered the gun, Appellant and his three passengers were transported to the Rochester Township Police Department. *Id.* at 56.  Pertinent to this appeal, we reiterate that the car collision occurred in Rochester, while the gun and other items were thrown from the car in New Sewickley.

---

[4] Officer Reese's first name is not apparent from the record.

- 5 -

Rochester Township Officer Mohrbacher testified to the following. At the scene, the passenger Owens told him that Appellant "handed [him] the gun to throw out the window." N.T., 1/15/20, at 69. Officer Mohrbacher located a loaded gun "about 5 or 10 feet" from the passenger side of Appellant's car. *Id.* at 70. At the station, Officers Mohrbacher and Nicol took statements from Appellant and the passengers in his car. *Id.* at 75. Appellant, however, did not sign his written statement. *Id.* at 83. Officer Mohrbacher "didn't double check to make sure that the signature was on there." *Id.* Nevertheless, Officer Mohrbacher "witnessed" Appellant write his statement. *Id.* at 84.

Rochester Township Officer Nicol testified that at the police department, he confirmed that Appellant did not have a license to carry a firearm. N.T., Non-Jury Trial Vol. II, 1/16/20, at 10. Appellant then made a written statement, in which he admitted to handing a "firearm over [to Owens] to be thrown out of [the] car." *Id.* at 28. Officer Nicol denied that Appellant had an opportunity to speak with Owens or the other passengers before any of their written statements were complete. *Id.* at 71.

We further note the following evidence pertinent to Appellant's claims on appeal. At the time Appellant made his written statement, Officer Nicol believed the cameras in the police department were functional and he was not aware that any video footage was automatically deleted after 30 days. N.T., 1/16/20, at 34-35, 65-66. After the preliminary hearing for this case, Officer Nicol requested the video, but he was informed that these were "false

cameras[.]" *Id.* at 34-35, 66. At a later time,[5] Officer Nicol was informed the cameras were, in fact, functional, but the footage was no longer stored in the camera as more than 30 days had passed. *Id.* at 34-36.

Appellant did not testify or present any evidence. *See* N.T., Non-Jury Trial Vol. IV, 1/22/20, at 30. On January 8, 2020, the trial court dismissed by order Appellant's charge of possession of a firearm prohibited. As stated above, a non-jury trial commenced on January 15th. On January 22nd, the trial court granted Appellant's motion for acquittal regarding receiving stolen property. On January 24th, the trial court found Appellant guilty of firearms not to be carried without a license, one count of accidents involving death or personal injury,[6] tampering or fabrication of physical evidence, and accidents involving damage to an attended vehicle or property.

The sentencing hearing, initially scheduled for March 17, 2020, was first continued, upon the Commonwealth's motion, which stated it had not received Appellant's pre-sentence investigation report. Order, 3/16/20. Sentencing was then continued again, to May 12, 2020, due to COVID-19 pandemic judicial emergency. Order, 4/6/20.

On June 10, 2020, 139 days after his guilty verdict was announced, Appellant filed a Pa.R.Crim.P. 704 motion. He acknowledged that sentencing

---

[5] Officer Nicol did not specify when he learned the cameras were functional.

[6] The trial court found Appellant not guilty of the second count of accidents involving death or personal injury.

was scheduled to be conducted the following day, June 11th, but this was "well outside the 90-day limit as proscribed" by the rule. Appellant's Motion for Discharge Pursuant to Pa.R.Crim.P. 740, 6/10/20, at 2, 4 (unpaginated). Appellant therefore requested that "all charges in this case be discharged." *Id.* We note that during this time, Appellant was incarcerated not only for this case, but also two unrelated criminal matters.

The following day, June 11, 2020, the trial court denied Appellant's motion for discharge, and sentenced him to an aggregate term of 18 to 36 months' incarceration. Appellant received time credit for 157 days.[7]

Appellant filed a timely counseled post-sentence motion, requesting a new trial, acquittal on all charges, arrest of judgment, discharge pursuant to Pa.R.Crim.P. 704, and the right to file a supplemental motion. The motion also requested the appointment of new counsel, per Appellant's wishes. In response, on September 18, 2020, the trial court appointed new counsel, Sherri Hurst, Esquire, and allowed Attorney Hurst to file a supplemental post-sentence motion. Attorney Hurst filed a timely supplemental post-sentence motion, which the trial court denied on October 14, 2020. This timely appeal followed. The trial court did not order Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises five issues on appeal:

_____

[7] Subsequently, upon Appellant's post-sentence motion, the trial court added one day of additional credit, for a total of 158 days. Amended Order, 7/24/20.

- 8 -

1. Whether the trial court erred by not granting [Appellant's] motion for [judgment] of acquittal, at the conclusion of the Commonwealth's case, on the basis that [the] Commonwealth's evidence was insufficient to establish that [Appellant] possessed a firearm or that he altered, destroyed, concealed[,] or removed any evidence with the intent to impair its verity or availability in an investigation in Rochester Township regarding the charges of firearms not to be carried without a license [ ] and tampering with/fabricating physical evidence[ ]?

2. Whether the trial court erred by not granting [Appellant's] motion for [judgment] of acquittal, at the conclusion of the Commonwealth's case, on the basis that [the] Commonwealth's evidence was insufficient to establish that [Appellant] possessed a firearm or that he altered, destroyed, concealed[,] or removed any evidence with the intent to impair its verity or availability in an investigation?

3. Whether the trial court erred by not granting [Appellant's] motion for [judgment] of acquittal, at the conclusion of the Commonwealth's case, on the basis that [the] Commonwealth's evidence was insufficient to establish that [Appellant] failed to immediately stop[ ] when able to do so, regarding the charges of accidents involving death or personal injury [ ] and accidents involving damage[ ] to an attended vehicle [ ]?

4. Whether the trial court erred by not granting [Appellant's] motion for [judgment] of acquittal, at the conclusion of the Commonwealth's case, on the basis that [the] Commonwealth's evidence was against the weight of the evidence as [Appellant] stopped his vehicle within a reasonable amount of time, the evidence did not suggest [Appellant] possessed any evidence and the Rochester Township Police Department lacked jurisdictional authority regarding the offenses concerning the firearm and other evidence?

5. Whether the trial court erred by not granting [Appellant's] motion for discharge pursuant to Pennsylvania Rule[ ] of Criminal Procedure 704 because [Appellant] was sentenced outside of the required ninety [ ] day time period?

Appellant's Brief at 9-11 (some capitalization omitted).

Preliminarily, we note the trial court states Appellant's weight and sufficiency claims are waived as "he did not adequately identify the errors that he intended to challenge on appeal." Trial Ct. Op., 1/12/21, at 3, *citing* ***Commonwealth v. Bonnett***, 239 A.3d 1096, 1106 (Pa. Super. 2020) (Pa.R.A.P. 1925(b) concise statement must identify the errors with sufficient specificity for the trial court to identify and address them), *appeal denied*, 585 MAL 2020 (Pa. March 9, 2021). However, while ***Bonnett*** addressed waiver for failure to sufficiently identify an issue in a court-ordered Rule 1925(b) statement, here, the court did not direct Appellant to file such a statement, and none was filed. Because we can discern Appellant's claims on appeal, we decline to find waiver.

In his first argument, Appellant argues there was insufficient evidence to prove he possessed "or discarded the firearm within the jurisdiction of Rochester Township." Appellant's Brief at 21. In support, Appellant claims the Rochester Township Police did not have authority to apprehend him for the firearms offenses committed in New Sewickley.[8] Appellant then reviews the Municipal Police Jurisdiction Act, which grants municipal officers authority outside their jurisdictions under six scenarios. ***Id.*** at 23-25, *citing* 42 Pa.C.S. § 8953(a). Appellant insists none of the scenarios apply here, where, particularly, New Sewickley Township Police did not request aid from

---

[8] In so arguing, Appellant emphasizes there were two "separate allegations of criminal activity[:]" the accident in Rochester and the possession and disposal of a firearm in New Sewickley. Appellant's Brief at 22.

Rochester Police, nor did Rochester Police observe any offense while on "official business." **Id.** at 27, *citing* 42 Pa.C.S. § 8953(a)(3), (5).

Here, the trial court understood Appellant's "arguments to imply that the location of the offense within a particular municipality is an element of the offense that the Commonwealth must prove beyond a reasonable doubt." Trial Ct. Op., at 4. The court rejected such a contention, finding the Commonwealth need not establish "proof of the location of the crime beyond that of it taking place within [ ] Pennsylvania and that the conduct [ ] occurred, at least in part, within the County in which [the] Defendant is prosecuted." **Id.** at 4 (footnotes omitted).

Appellant fails to address this discussion by the trial court, and instead simply reiterates the same mistaken argument before this Court. We agree with the trial court — and Appellant does not dispute — that a particular Pennsylvania location is not an element of any of the crimes charged herein. Accordingly, Appellant's challenge to the sufficiency of the evidence, on the ground that the municipal police lacked authority to stop him, is meritless.

To the extent Appellant challenges the jurisdiction of the Rochester Police to apprehend him, we conclude no relief is due. Although Appellant seeks to distinguish the discarding of the gun in New Sewickley as a "separate allegation[ ] of criminal activity," he acknowledges that the vehicle collision occurred in Rochester Township, and it is not disputed that the New Sewickley officers called the Rochester Police upon learning this. **See** Appellant's Brief at 21. Accordingly, no relief is due.

- 11 -

We address Appellant's second and fourth issues together — that his convictions of discarding evidence and carrying a firearm without a license were against both the sufficiency and weight of the evidence. Appellant presents the following overlapping arguments in support of both claims: the Commonwealth "relied mostly" on the testimony of Genovese, Nardei, and Owens, as well as Appellant's unsigned statement to police. Appellant's Brief at 30. However, without Owens's "limited and unreliable" testimony, the Commonwealth could not prove Appellant possessed or discarded the firearm. *Id.* Owens's testimony was "incredible" because the Commonwealth promised not to charge him if he testified "the driver told me to toss the gun." *Id.* at 37-38. Meanwhile, Nardei testified at the preliminary hearing that the passenger discarded the gun when Nardei was standing outside his car. However, he changed his testimony at trial, after speaking with detectives and the Commonwealth. *Id.* at 37. Appellant also claims it was "convenient and telling" that Officer Nicol was under the impression the police department cameras were not functional until after "the [30] day expiration period had lapsed." *Id.* at 38. Finally, Appellant avers he never signed or adopted his written statement. *Id.* at 39. We conclude no relief is due.

Although Appellant frames his second issue as a challenge to the sufficiency of the evidence, his allegations of "unreliable" testimony and evidence go to witnesses' credibility, and thus the weight of the evidence. *See Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa. Super. 2006) ("A

true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed.").

The standard by which we examine weight of the evidence claims is well settled:

> A motion for new trial[,] on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations omitted). Furthermore, "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citation omitted).

Firearms not to be carried without a license is defined as follows:

> [A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S. § 6106(a)(1).

Tampering with or fabricating physical evidence is defined as follows:

A person commits a misdemeanor of the second degree if, believing that an official proceeding or investigation is pending or about to be instituted, he:

(1) alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation[.]

18 Pa.C.S. § 4910(a)(1).

Regarding Nardei, Appellant points to inconsistent testimony between the preliminary hearing and trial. Nevertheless, whether Nardei was inside or outside his car when Owens discarded the gun was not material to Appellant's convictions. This "mere conflict in the testimony" does not negate that Nardei testified at both proceedings that a gun was discarded from the passenger side window of Appellant's car. *See Widmer*, 744 A.2d at 752.

Next, Appellant asserts Owens's testimony is not credible because the Commonwealth did not charge him in exchange for his testimony. Appellant ignores that Owens was, in fact, charged with possession of a small amount of marijuana. N.T., 1/15/20, at 146. This charge, however, was ultimately dismissed after Owens completed a diversion program. *Id.* Appellant also characterizes Owens's testimony as "the only thing [he] had to do was 'just say that the driver told me to toss the gun.'" Appellant's Brief at 38, *citing* N.T., 1/15/20, at 140. However, Appellant ignores Owens's trial statement that he was truthful in his testimony. N.T., 1/15/20, at 148. Appellant also questions Officer Nicol's testimony regarding the police department cameras. Appellant's Brief at 38. Finally, Appellant challenges the weight of his own

written, but unsigned, statement admitted at trial. The trial court was free to believe all, part, or none of this evidence offered by the Commonwealth and we see no abuse of discretion in its determinations. *See Champney*, 832 A.2d at 408. Appellant's arguments would have this Court reweigh the evidence in his favor. This we cannot do. *See Widmer*, 744 A.2d at 752. The trial court's credibility determinations were not an abuse of discretion, and its determinations did not "deny justice." *See id.* Thus, no relief is due.

In his third claim, Appellant argues there was insufficient evidence to prove either accidents involving death or personal injury or accidents involving damage to an attended vehicle. Appellant's Brief at 34. Appellant avers the Commonwealth could not establish that he did not "immediately stop the vehicle at the scene of the accident or as close thereto as possible[,]" as the above offenses require. *Id.* Appellant insists the terms "scene of the accident" and "as close thereto as possible" are not defined and thus, we must look at the totality of the circumstances. *Id.* Appellant relies on Genovese's testimony that Deer Lane Extension "continually went up hill and then downhill with lots of bends" and Nardei's testimony that Appellant stopped his car "less than a minute" after the accident. *Id.* No relief is due.

The standard by which we examine sufficiency claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to

human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Widmer*, 744 A.2d at 751 (citations omitted).

The offense of accidents involving death or personal injury is defined as follows:

The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid). Every stop shall be made without obstructing traffic more than is necessary.

75 Pa.C.S. § 3742(a).

Accidents involving damage to attended vehicle or property is defined as follows:

The driver of any vehicle involved in an accident resulting only in damage to a vehicle or other property which is driven or attended by any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid). Every stop shall be made without obstructing traffic more than is necessary.

75 Pa.C.S. § 3743(a).

Here, Appellant only challenges the requirements that a driver "shall immediately stop the vehicle at the scene of the accident or as close thereto as possible" under both statutes. Appellant's argument, however, completely ignores the testimony of Nardei and Genovese describing Appellant's actions

after the collision. Nardei testified that Appellant did not stop his vehicle even though there were "at least" two other opportunities to pull over. N.T. 1/15/20, at 31, 35. Genovese similarly testified that Appellant continued to drive "down the road," despite Nardei repeatedly operating his car horn and high beams. *Id.* at 10-12. Reviewing the evidence in the light most favorable to the Commonwealth, it "establishe[d] each material element of the crime charged and the commission thereof by [Appellant] beyond a reasonable doubt." *See Widmer*, 744 A.2d at 751. Thus, no relief is due.

In Appellant's final claim, he asserts the trial court erred in denying his motion for discharge when it sentenced him after Rule 704's 90-day sentencing period. Appellant's Brief at 39. Appellant maintains he and the Commonwealth agreed four days prior to his then-scheduled May 12, 2020, sentencing hearing that "no in person allocution would occur." *Id.* at 40-41. Appellant claims the Commonwealth deliberately delayed sentencing when it "disregard[ed]" this agreement by bringing Genovese, Nardei, and officers to the scheduled sentencing hearing on May 12th. *Id.* at 40-41. Appellant acknowledges that at the time of sentencing, he was also "being held on multiple cases." *Id.* at 41. Appellant then claims prejudice by the sentencing delay because "all his credit was applied to this case," and "there was no credit available for [the] subsequent sentencing at" his other case. *Id.*

Pennsylvania Rule of Criminal Procedure 704(A) provides, in pertinent part:

> (1) . . . sentence in a court case shall ordinarily be imposed within 90 days of conviction or the entry of a plea of guilty or *nolo contendere*.
>
> (2) When the date for sentencing in a court case must be delayed, for good cause shown, beyond the time limits set forth in this rule, the judge shall include in the record the specific time period for the extension.  . . .

Pa.R.Crim.P. 704(A)(1)-(2).

> When addressing speedy sentencing claims, this Court has explained:
>
> [A] defendant who is sentenced in violation of Pa.R.Crim.P. [704], is entitled to a discharge only where the defendant can demonstrate that the delay in sentencing prejudiced him or her. . . . To determine whether discharge is appropriate, the trial court should consider:
>
> (1) the length of the delay falling outside of the [90-day and good-cause] provisions [of Pa.R.Crim.P. 704]; (2) the reason for the improper delay; (3) the defendant's timely or untimely assertion of his rights; and (4) any resulting prejudice to the interests protected by his speedy trial and due process rights. Prejudice should not be presumed by the mere fact of an untimely sentence. Our approach has always been to determine whether there has in fact been prejudice, rather than to presume that prejudice exists. The court should examine the totality of the circumstances, as no one factor is necessary, dispositive, or of sufficient importance to prove a violation.

*Commonwealth v. Diaz*, 51 A.3d 884, 887 (Pa. Super. 2012) (citations omitted).

Here, Appellant fails to show prejudice resulting under Rule 704. **See** **Diaz**, 51 A.3d at 887.  Appellant claims he was prejudiced when he was denied time credit on unrelated charges for which he was also detained.  He refers to this as "lost credit time."  Appellant's Brief at 40.  However, Appellant acknowledges that "time credit on a sentence may be granted only when it

has not already been credited toward another sentence." *Id.* at 41, *citing* 42 Pa.C.S. § 9760(4) (when defendant is arrested on one charge and later prosecuted on another, credit against any sentence resulting from such prosecution shall be given for all time spent in custody that has not been credited towards another sentence); *Bright v. Pa. Bd. Of Prob. & Parole*, 831 A.2d 775, 778 (Pa. Cmwlth. 2003) (time credit on a sentence may only be granted when it has not already been applied to another sentence). Furthermore, the trial court sentenced Appellant to an aggregate 18 to 36 months' incarceration and credited him 157 days of time served. Appellant would have remained incarcerated even if the trial court sentenced him at an earlier time. Appellant cannot "demonstrate that the delay in sentencing prejudiced him[,]" and thus he is not entitled to a discharge of his convictions. *See Diaz*, 51 A.3d at 887. For this reason, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/2021