J-S38030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :---: |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROCKY SOKOLOWSKI | : | |
| | : | |
| Appellant | : | No. 1469 EDA 2022 |

Appeal from the Judgment of Sentence Entered May 19, 2022
In the Court of Common Pleas of Monroe County
Criminal Division at CP-45-CR-0001562-2020

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :---: |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROCKY SOKOLOWSKI | : | |
| | : | |
| Appellant | : | No. 1470 EDA 2022 |

Appeal from the Judgment of Sentence Entered May 19, 2022
In the Court of Common Pleas of Monroe County
Criminal Division at CP-45-CR-0001563-2020

BEFORE:  KUNSELMAN, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:                    **FILED JULY 20, 2023**

Rocky Sokolowski (Appellant) appeals from the judgment of sentence

entered after he pled guilty to one count of attempted invasion of privacy at

CP-45-CR-0001562-2020 (attempt case), and two counts of invasion of privacy at CP-45-CR-0001563-2020 (invasion case).[1]  We affirm.

Appellant is a registered sex offender.  In July 2020, he was in a store, following a mother and her minor daughter, when the mother observed Appellant "bend down next to her minor daughter and place[] his face and nose inside the rear of the minor female's loose-fitting pants, appearing to be sniffing at her buttocks."  Affidavit of Probable Cause, 8/6/20, at 1.  In a second incident, Appellant followed an adult woman at a food store and appeared to smell "her buttock or groin area."  *Id.*  The woman believed it was also possible Appellant was photographing her "groin area."  *Id.*

As a result of the July 2020 incidents, the Commonwealth charged Appellant with the above crimes.  The trial court recounted the procedural history as follows:

> On June 30, 2021, [Appellant] entered guilty pleas in both cases.[2]  … [The trial court] scheduled sentencing for September 23, 2021.
>
> On September 23, 2021, [the trial court] convened the sentencing hearing.  At that time, [the trial court] realized [it] had inadvertently failed to order an assessment by the sexual offender

---

[1] *See* 18 Pa.C.S.A. §§ 901(a) and 7507.1(a)(2).  Appellant has complied with the Pennsylvania Supreme Court's directive in *Commonwealth v. Walker*, 185 A.3d 969, 971 (Pa. 2018) ("where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case.").  On June 22, 2022, this Court consolidated the cases *sua sponte*.

[2] That same day, Appellant entered negotiated guilty pleas in two unrelated cases at CP-45-CR-0001741-2020 (failure to register as to the 1st case), and CP-45-CR-0001755-2020 (failure to register as to the 2nd case).

assessment board [SOAB] to determine whether the [Appellant] should be classified as a sexually violent predator [SVP]. As a result, [the trial court] rescheduled sentencing for December 14, 2021, and directed the SOAB to conduct the necessary assessment. The Commonwealth filed its Praecipe pursuant to 42 Pa.C.S.A. § 9795.4 on December 10, 2021. On December 14, 2021 — the day on which sentencing was scheduled to occur — the Commonwealth filed a motion for continuance — requesting sentencing be continued because its SOAB evaluator, Dr. Mary Muscari, was unavailable to testify. [The court] granted the Commonwealth's motion and continued sentencing to March 10, 2022 — the first day in the [c]ourt's schedule with sufficient time to conduct both the SVP hearing and sentencing.

On March 10, 2022, [the trial court] convened the SVP and sentencing hearings. At the outset of the hearing, the Commonwealth advised that Dr. Muscari was not present, but did not know why she was absent. … [The court] continued the hearings to May 19, 2022. [It] placed [the] reasons for doing so on the record on March 10, 2022.

Trial Court Opinion, 6/24/22, at 1-2 (footnote added).

The trial court held the combined sentencing/SVP hearing on May 19, 2022. The court sentenced Appellant, in accordance with the terms of the guilty plea, to an aggregate 2 - 4 years of incarceration, followed by 8 years

of probation.[3]  **See** Guilty Plea Colloquy and Plea, 3/9/22, at 1.  Appellant did

not file a post-sentence motion.  This timely appeal followed.[4]

Appellant raises two issues for review:

1. Whether, on March 10, 2022, the sentencing court erred when it continued the Appellant's sentencing a [third] time, in violation of Pa.R.Crim.P. 704, when the Commonwealth's expert witness failed to appear on that date, without explanation, and after the Commonwealth had previously continued the sentencing to schedule the expert witness for March 10, 2022 as a date on which the expert witness would be available to testify?

2. Whether the sentencing court erred when it found that the Appellant was an [SVP] based upon hearsay?

Appellant's Brief at 5 (footnote omitted).

Appellant first argues the trial court erred and abused its discretion in

sentencing him more than 90 days after his conviction, in violation of

Pa.R.Crim.P. 704.  Appellant's Brief at 11-14.  Appellant has not preserved

this issue.

---

[3] For the convictions of failure to register, the trial court sentenced Appellant to 2 - 4 years of incarceration, followed by 2 years of probation.  **See** Order — Sentencing, 5/19/22, at 1 (unnumbered).  For his conviction in the attempt case, the trial court sentenced Appellant to 2 years of probation, to be served consecutively to the probation sentences in the failure to register cases.  **See id.**  For his convictions in the invasion cases, the trial court sentenced Appellant to an aggregate 4 years of probation, to be served consecutively to the probation in the other cases.  **See id.**  The trial court credited Appellant with 647 days of time served.  N.T., 5/19/22, at 47.

[4] Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant did not file a written pre-sentence motion to dismiss pursuant to Pa.R.Crim.P. 704(A) (Time for Sentencing).[5] The record does not indicate, in either the March 10, 2022, or May 19, 2022, proceedings, that Appellant made an oral motion to dismiss.[6] Appellant raised this issue for the first time in his Rule 1925(b) statement. **See** Concise Statement of Matters Complained of on Appeal, 6/8/22, at 1 (unnumbered). An appellant may not raise an issue for the first time on appeal. **See Commonwealth v. Coleman**, 19 A.3d 1111, 1118 (Pa. Super. 2011) (issues raised for first time in a Rule 1925(b) statement are waived). Thus, the issue is waived. **See** Pa.R.A.P. 302(a) (stating an issue cannot be raised for the first time on appeal).

The issue would lack merit even if it had been preserved. When reviewing a claim of undue delay in sentencing,

> we defer to the trial court's judgment on this issue of alleged undue delay and shall reverse only for an abuse of discretion. … [M]ere errors in judgment do not amount to abuse of discretion; instead, we look for manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly

---

[5] While Rule 704 does not specify the procedure by which a defendant invokes his right to a speedy sentence, the practice has been for a defendant to present a written or oral motion to dismiss prior to sentencing. **See e.g.**, **Commonwealth v. Still**, 783 A.2d 829, 831 (Pa. Super. 2001) (appellant challenged delay in sentencing by filing a motion to dismiss); **see also Commonwealth v. Neysmith**, 192 A.3d 184, 192 (Pa. Super. 2018) (appellant filed motion to dismiss on speedy sentencing grounds resulting in an evidentiary hearing).

[6] The notes of testimony from March 10, 2022, reflect that the trial court, not Appellant, raised the issue of the 90 days prescribed in Rule 704(A), and while Appellant objected to another continuance, he did not move to dismiss. N.T., 3/10/22, at 9-12.

erroneous. In addition, a trial court abuses its discretion if the law is overridden or misapplied.

….

[O]ur scope of review is limited to the evidence on the record … and the factual findings of the trial court. Also, we must view the facts found in the light most favorable to the prevailing party.

*Commonwealth v. Neysmith*, 192 A.3d 184, 192–93 (Pa. Super. 2018)

(citations and quotation marks omitted).

Rule 704 provides:

**(A) Time for Sentencing.**

(1) Except as provided by Rule 702(B), sentence in a court case shall ordinarily be imposed within 90 days of conviction or the entry of a plea of guilty or *nolo contendere*.

Pa.R.Crim.P. 704(A)(1). **The comment to Rule 704 recognizes that delays in sentencing may be caused by SVP assessments**:

Paragraph (A)(2) … permits the judge to extend the time limit for sentencing under extraordinary circumstances only. For example, additional pre-sentence procedures may be required by statute. *See* 42 Pa.C.S. §§ 9799.11-9799.41 for pre-sentence assessment and hearing procedures for persons convicted of sexually violent offenses.

Pa.R.Crim.P. 704, comment.

We have explained:

With respect to the sanction for a violation of Rule 704, this Court has held, [t]he appropriate remedy for a violation of Pa.R.Crim.P. 1405 [now Pa.R.Crim.P. 704], is discharge. However, the remedy does not automatically apply whenever a defendant is sentenced more than [ninety] days after conviction without good cause. Instead, a violation of the [ninety-day] rule is only the first step toward determining whether the remedy of discharge is appropriate.

….

> [A] defendant who is sentenced in violation of Pa.R.Crim.P. 1405
> [now Pa.R.Crim.P. 704] is entitled to a discharge only where the
> defendant can demonstrate that the delay in sentencing
> prejudiced him or her. ... [T]o determine whether discharge is
> appropriate, the trial court should consider: (1) the length of the
> delay[;] … (2) the reason for the improper delay; (3) the
> defendant's timely or untimely assertion of his rights; (4) any
> resulting prejudice to the interest protected by his speedy trial and
> due process rights. Prejudice should not be presumed by the mere
> fact of an untimely sentence. Our approach has always been to
> determine whether there has in fact been prejudice, rather than
> to presume that prejudice exists. The court should examine the
> totality of the circumstances, as no one factor is necessary,
> dispositive, or of sufficient importance to prove a violation.

*Commonwealth v. Diaz*, 51 A.3d 884, 887 (Pa. Super. 2012) (citation omitted). Additionally, "Rule 704 [is not] aimed at addressing or eliminating clerical error. Protecting the accused from inexcusable or intentional delay on the part of the court or the Commonwealth, the 'whim' or power of the state, is the underpinning of the right to a speedy trial." *Id.* at 889 (citation omitted).

Upon review, we agree that the 323-day delay was lengthy. *See* Appellant's Brief at 13-14. However, we disagree with Appellant's claim that the Commonwealth caused the delay. *Id.* at 13. Appellant asserts it was "the responsibility of the Commonwealth, not the Court, to request [the SOAB] evaluation." *Id.* at 13 n.3. Appellant disregards the statutorily imposed role of the trial court:

> After conviction but before sentencing, **a court shall order** an
> individual convicted of a sexually violent offense to be assessed

by the board. The order for an assessment shall be sent to the executive director of the board within ten days of the date of conviction for the sexually violent offense.

42 Pa.C.S.A. § 9799.24(a) (emphasis added).

The trial court acknowledged it "inadvertently" failed to order the assessment. Trial Court Opinion, 6/24/22, at 2. Because of the oversight, the court rescheduled sentencing for December 13, 2021. *See* Order, 9/23/21, at 1 (unnumbered). Dr. Muscari, the SOAB evaluator, was unavailable for the December hearing. The court continued the hearing to March 10, 2022; Appellant did not object. *See* Motion to Continue Sentencing, 12/13/21, at 2 (unnumbered). Dr. Muscari then failed to appear at the March 10, 2022 hearing. *See* N.T., 3/10/22, at 2. At that time, **Appellant's counsel** raised this Court's decision in *Commonwealth v. Aumick*, 2022 WL 533997 (Pa. Super. Feb. 23, 2022) (withdrawn), *reargument granted*, 1529 EDA 2020, 2022 WL 1439520, at *1 (Pa. Super. Ct. May 6, 2022), *affirmed*, -- A.3d ---, 2023 WL 3939850 (Pa. Super. Jun. 12, 2023) (*en banc*).[7] The original *Aumick* panel reversed the trial court's designation of the defendant as an SVP, based on the testimony of an expert who had relied on unproven hearsay allegations in third-party documents. Here, the parties agreed that under *Aumick* at that time, they would have been unable to proceed even if Dr. Muscari had been present, because Dr. Muscari relied on third-party

---

[7] This Court withdrew the original decision when it granted reargument. *Commonwealth v. Aumick*, 2022 WL 1439520 (Pa. Super. May 6, 2022). .

documents. *Id.* at 5, 7-10, 12. The Commonwealth requested a "very short continuance," but the trial court was unable to ensure that the continuance would be short due to scheduling constraints and the time required for the SVP hearing. *Id.* at 14; *see also id.* at 14-15.

Our review confirms the sentencing delay was not the result of the Commonwealth's "whim," or an attempt to unreasonably delay "the formal declaration of a negotiated sentence." *See Diaz*, 51 A.3d at 887. The delay was the result of the trial court's failure to order an assessment, the unavailability of the SOAB evaluator, a change in the law, and the trial court's calendar. Under these circumstances, Appellant has not shown the Commonwealth intentionally attempted to undermine his right to a speedy sentence. *Id.* at 889.

Regarding the third factor – whether Appellant timely asserted his rights – Appellant did not do so given that he first raised the issue in his Rule 1925(b) statement. *See id*.

Finally, as to prejudice, *see Diaz*, 51 A.3d at 887, the trial court stated:

[Appellant] has never alleged any prejudice that resulted to him because of the continuance of sentencing that we granted on March 10, 2021. Further, we know of no other case that [Appellant] is serving for which he could have received time credit. We simply know of no prejudice to [Appellant] that resulted from the continuance.

Trial Court Opinion, 6/24/22, at 4.

The record supports the trial court's determination that Appellant suffered no prejudice. Appellant never asserted prejudice at either the March

10, 2022, or May 19, 2022, hearings. *See* N.T., 3/10/22, at 12 (Appellant opposed a continuance but did not raise Rule 704 or claim prejudice resulting from the delay); N.T., 5/19/22, at 3-4 (trial court referencing Appellant's objection to Dr. Muscari's testimony and report based on *Aumick*, but not discussing the sentencing delay or Rule 704). Consequently, Appellant would not be entitled to relief even if he had preserved this issue.

In his second issue, Appellant challenges his SVP designation. Appellant's Brief at 14-24. Appellant argues his designation as an SVP was "contrary to [the] nature and extent of [his] plea agreements … with consequences that go beyond the extent of his negotiated plea." *Id.* at 15. He maintains the designation "went far and away beyond Appellant's plea bargain. … Appellant did not confess or plead guilty to anything other than invading a person's privacy by unspecified means." *Id.* at 17. He further claims the trial court's determination was based "entirely on hearsay[.]" *Id.* at 18 (some capitalizations omitted). Appellant complains his designation was not "supported by anything but hearsay, rumors, and supposition." *Id.* at 20.

As stated above, Appellant never raised a violation of his plea agreement with the trial court.[8] Appellant did not move to withdraw his guilty plea when

_____

[8] The transcript of the guilty plea colloquy is not in the record. Appellant filed a motion for transcripts on May 31, 2022, asking only for transcription of the March 10, 2022, and May 19, 2022, hearings. Motion for Transcripts, 5/31/22, at 1 (unnumbered). "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the
*(Footnote Continued Next Page)*

the trial court continued sentencing for the SOAB assessment, or at the March 10, 2022, and May 19, 2022, hearings. *See* N.T., 3/10/22, at 3, 5 (Appellant arguing Dr. Muscari's report and proposed testimony constituted hearsay under the now-withdrawn *Aumick* decision); N.T., 5/19/22, at 4-5, 41-43 (Appellant indicating he wished to proceed with sentencing following Dr. Muscari's testimony). Also, Appellant did not file a post-sentence motion to withdraw his guilty plea. In his Rule 1925(b) statement, Appellant queries: "Whether the trial court erred when it found that the Appellant was an [SVP] based upon hearsay?" Concise Statement of Errors Complained of on Appeal, 6/8/22, at 1 (unnumbered).

It is established law that failure to move to withdraw a guilty plea in the trial court results in waiver of a challenge to the voluntary nature of the plea on appeal. *See Commonwealth v. Lincoln*, 72 A.3d 606, 609-10 (Pa. Super. 2013) ("A defendant wishing to challenge the voluntariness of a guilty plea … must either object during the plea colloquy or file a motion to withdraw the plea within ten days of sentencing. Failure to employ either measure results in waiver." (citations omitted)); Pa.R.Crim.P. 720(B)(1)(a)(i).

Moreover, "[t]he Pa.R.A.P. 1925(b) statement must be sufficiently 'concise' and 'coherent' such that **the trial court judge may be able to**

_____

sense that it contains all of the materials necessary for the reviewing court to perform its duty." *Commonwealth v. Holston*, 211 A.3d 1264, 1276 (Pa. Super. 2019) (*en banc*).

- 11 -

identify the issues to be raised on appeal[.]" *Commonwealth v. Vurimindi*, 200 A.3d 1031, 1038 (Pa. Super. 2018) (emphasis added). Because Appellant failed to properly preserve his claim that the SOAB assessment violated his plea agreement, it is waived. *Lincoln*, *supra*; *Vurimindi*, *supra*.

Appellant next argues that the trial court improperly relied on hearsay evidence in designating him an SVP. Appellant's Brief at 19-24. In considering the evidence supporting an SVP designation, we recognize:

> In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is an SVP. … [W]e view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

*Commonwealth v. Hollingshead*, 111 A.3d 186, 189 (Pa. Super. 2015) (citation and brackets omitted); *see also Commonwealth v. Meals*, 912 A.2d 213, 219 (Pa. 2006) ("The clear and convincing standard requires evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." (citation and brackets omitted)). We may not weigh the evidence or substitute our judgment for that of the trial court. *Commonwealth v. Prendes*, 97 A.3d 337, 355 (Pa. Super. 2014). Further, an expert's opinion, "**rendered to a reasonable degree of professional certainty, is itself evidence.**" *Id.* (emphasis in original).

The Sex Offender Registration and Notification Act (SORNA), 42 Pa.C.S.A. §§ 9799.10—9799.42, requires a trial court to order an individual who has been convicted of a "sexually violent offense" to be assessed by the SOAB. *Id.* § 9799.24(a); *see also id.* § 9799.12 (defining sexually violent offense). Following the entry of such order, the SOAB is responsible for conducting an assessment to recommend whether the individual should be classified as an SVP. *Id.* § 9799.24(b). The assessment involves

> whether the instant offense involved multiple victims; whether the defendant exceeded the means necessary to achieve the offense; the nature of the sexual contact with the victim(s); the defendant's relationship with the victim(s); the victim(s)' age(s); whether the instant offense included a display of unusual cruelty by the defendant during the commission of the offense; the victim(s)' mental capacity(ies); the defendant's prior criminal record; whether the defendant completed any prior sentence(s); whether the defendant participated in available programs for sexual offenders; the defendant's age; the defendant's use of illegal drugs; whether the defendant suffers from a mental illness, mental disability, or mental abnormality; behavioral characteristics that contribute to the defendant's conduct; and any other factor reasonably related to the defendant's risk of reoffending.

*Hollingshead*, 111 A.3d at 190; *see also* 42 Pa.C.S.A. § 9799.24(b)(1)-(4) (statutory factors). There is no requirement that **all** statutory factors or any number of them be present or absent to support an SVP designation. *Commonwealth v. Brooks*, 7 A.3d 852, 863 (Pa. Super. 2010). After the SOAB completes its assessment, the trial court holds a hearing to "determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a[n SVP]." 42 Pa.C.S.A. § 9799.24(e)(3).

SORNA defines an SVP as someone who has been convicted of one of the enumerated offenses, and "who is determined to be a[n SVP] under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." *Id.* § 9799.12. An act is considered "predatory" under SORNA if it is "directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.*

> Appellant claims:
>
> None of the 14 factors was supported by anything but hearsay, rumor, and supposition. Even the facts of the current case, as pled to, did not clarify any of the factors to be assessed in the SVP assessment. Dr. Muscari merely determined Appellant to be an [SVP] on the basis of the records she had reviewed. She did not examine the victim[s] but instead went by the information she received from the Commonwealth.

Appellant's Brief at 20.

Appellant concedes that the caselaw he relies upon concerns the admissibility of evidence at a criminal trial, rather than the basis for an SVP determination. *Id.* at 23. Nonetheless, Appellant argues:

> The alleged victim(s) never testified at any level of this case. Accusations against the Appellant were never tried or tested in any appropriate forum. No statements of the Appellant were introduced, including any explanations or denials. No accounts of what actually happened were heard or video reviewed.

*Id.*

- 14 -

The testimony Appellant references does not exist because Appellant elected to plead guilty rather than proceed to trial. The trial court offered Appellant the opportunity to withdraw his guilty plea **after Dr. Muscari testified**, and Appellant refused; he chose to proceed with his plea. *See* N.T., 5/19/22, at 43.

This Court has explained*:*

> The statute governing the SVP assessment does not limit the expert's consideration of information only to that admitted at trial or **at the guilty plea proceedings**. In fact, the statute requires state, county, and local agencies, offices or entities to provide copies of records and information as requested by the SOAB in connection with an SVP assessment, without limitation on the "admissibility" of that information. *See* 42 Pa.C.S.A. § 9799.24(c). As a result, it stands to reason that some if not many of the facts necessary to perform the SVP assessment might not have been proven beyond a reasonable doubt. Thus, we hold an SOAB expert opinion falls within the general rules regarding expert witnesses. As such, an SOAB expert's opinion may be based on facts or data that the expert has been made aware of or personally observed so long as experts in the particular field reasonably rely on those kinds of facts or data in forming an opinion on the subject; the facts or data consulted need not be admissible for the expert's opinion to be admitted. *See* Pa.R.E. 702, 703 ... The SOAB expert must state the facts or data on which the opinion is based. *See* Pa.R.E. 705 and Comment (explaining otherwise inadmissible facts and data supporting expert opinion are considered only to explain the basis for an expert's opinion, not as substantive evidence). Then, the rules of evidence place the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination.... Opposing counsel bears the burden of exposing and exploring any weaknesses in the underpinnings of the expert's opinion.

*Prendes*, 97 A.3d at 360–61 (some citations omitted, emphasis added).

- 15 -

In deciding **Aumick** *en banc* and applying **Prendes**, this Court confirmed that an SOAB evaluator could consider hearsay evidence. We stated:

> Based on the reasoning expressed in **Prendes**, we conclude that [the SOAB evaluator] was permitted to consider the affidavit of probable cause, criminal information, criminal complaint, preliminary hearing transcript, and the investigative reports prepared by Child Protective Services when assessing Aumick. Pursuant to revised Subchapter H, the SOAB must undertake a comprehensive assessment of a defendant convicted of a sexually violent offense by considering the fifteen factors set forth in section 9799.24(b)(1)-(4). Section 9799.24(c) expressly requires that "[a]ll State, county and local agencies, offices and entities in this Commonwealth, including juvenile probation officers, **shall cooperate by providing copies of records and information as requested by the board in connection with the court-ordered assessment** ...." Moreover, within ninety days of a defendant's qualifying conviction, the SOAB must prepare a written report regarding its assessment which includes, at a minimum, the following information: (1) a concise narrative of the individual's conduct; (2) whether the victim was a minor; (3) the manner of weapon or physical force used or threatened; (4) if the offense involved unauthorized entry into a room or vehicle occupied by the victim; (5) if the offense was part of a course or pattern of conduct involving multiple incidents or victims; and (6) previous instances in which the individual was determined guilty of an offense subject to this subchapter or of a crime of violence as defined in section 9714(g) (relating to sentences for second and subsequent offenses).
>
> **Given these statutory mandates, it is clear the legislature intended that the SOAB member consider more than the limited facts included in a plea colloquy**, and that the SOAB member undertake to review and consider the information contained in records provided by state, county and local agencies, offices and entities in this Commonwealth when making an SVP assessment and preparing a statutorily compliant written report. To be sure, it would be the rare occasion on which the SOAB member would be able to fulfill its statutory obligations if its SVP assessments and written reports were limited to facts

- 16 -

contained in a plea colloquy, admitted into evidence, or determined by the trier of fact.

Moreover, in the context of an SVP hearing, the judge is not tasked with evaluating the veracity of the facts underlying the expert's testimony. Indeed, the facts presented at an SVP hearing are not being offered for the truth of the matter asserted, as would be the case in a true hearsay scenario. Instead, they constitute information, gleaned from records which are reasonably relied on in SOAB evaluations, that is presented to the trial court solely to supply the basis for the expert's opinion in accordance with our Rules of Evidence. Accordingly, the otherwise inadmissible facts reasonably relied upon by [the SOAB evaluator] to explain the basis of her opinion, including the allegations of sexual abuse asserted by [a victim], do not constitute substantive evidence.

On the other hand, an expert's opinion which is rendered to a reasonable degree of professional certainty is, itself, substantive evidence. …

**Aumick**, 2023 WL 3939850, at *8 (citations and footnote omitted, some emphasis in original, some added).

Instantly, at the SVP hearing, the trial court stated:

I have to look at the testimony and evidence before me, and I agree that there is a mental health abnormality or a personality disorder that meets the first criterion, and then by the statute, and by Dr. Muscari's own testimony, the fact that … the victims are strangers, that makes it predatory. So that means those two factors are the two criterion that the [c]ourt has to look at. I agree with everything [the Commonwealth] said, and so I feel compelled to designate [Appellant an SVP].

N.T., 5/19/22, at 46-47.

The record supports the trial court's determination that Appellant met the statutory criteria for classification as an SVP. **See id.** at 12-15, 17-20 (Dr. Muscari testifying Appellant suffered from "paraphilic disorder"; had a prior offense "for the same behavior"; stopped attending sex offender

treatment despite indicating it was beneficial; planned his crimes in advance (including the purchase of a camera); failed to register as required by law; caused distress to victims and fixated on some victims; and demonstrated predatory behavior by committing crimes against strangers "because it's done solely for the purpose of victimization."). Accordingly, Appellant is not entitled to relief.

Judgment of sentence affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


Date: *7/20/2023*